UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY and
GEICO CASUALTY COMPANY,

               Plaintiffs,                  **<u>MEMORANDUM & ORDER</u>**

   - against -                   No. 22-CV-4608 (KAM)(JRC)

WILKINS WILLIAMS MEDICAL, P.C., ERIC
ST. LOUIS, 1 BROOKLYN CONSULTING
GROUP INC., KORSUNSKIY LEGAL GROUP,
P.C., DENIS KORSUNSKIY, ESQ., BIG
BRIDGE FUNDING, L.L.C., EMIL EFREM,
and JOHN DOE DEFENDANTS "1" through
"10",

               Defendants.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     On August 4, 2022, Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs") commenced this action for common law fraud, unjust enrichment, aiding and abetting fraud, negligent misrepresentation, Civil RICO violations, and a declaratory judgment, alleging that Defendants schemed to submit fraudulent no-fault insurance claims. (ECF No. 22, Am. Compl. ("AC").) On March 9, 2023, Plaintiffs filed an Amended Complaint against Defendants Wilkins Williams Medical,

P.C. ("Williams Medical"), Eric St. Louis ("St. Louis"), 1 Brooklyn Consulting Group Inc. ("1 Brooklyn"), Korsunskiy Legal Group, P.C. ("Korsunskiy Legal Group"), Big Bridge Funding, L.L.C. ("Big Bridge"), Denis Korsunskiy, Esq., Emil Efrem, and John Doe Defendants 1-10. All named Defendants except Mr. St. Louis and 1 Brooklyn answered, and Plaintiffs have dismissed all claims against them without prejudice.[1]

Plaintiffs now move for default judgment only on the common law fraud claim against Mr. St. Louis and 1 Brooklyn (collectively, the "Defaulting Defendants"). For the reasons below, the Court grants the motion.

## Background

### I. Factual Background

Unless otherwise indicated, the following facts are from Plaintiffs' Amended Complaint. Because Mr. St. Louis and 1 Brooklyn are in default, the Court accepts as true all well-pleaded factual allegations in the Amended Complaint, except as to damages. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (internal quotations omitted)).

### A. New York No-Fault Laws

---

[1] Plaintiffs have not identified the John Doe Defendants by name and do not seek a judgment against them now.

New York enacted the Comprehensive Motor Vehicle Insurance Reparations Act (the "Act"), New York Insurance Law §§ 5101-5109, for "prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts[,] and to provide substantial premium savings to New York motorists." *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 446 (E.D.N.Y. 2020) (internal quotations omitted).

Plaintiffs underwrite automobile insurance in New York. (AC ¶ 48.) The Act and corresponding regulations (11 N.Y.C.R.R. §§ 65, et seq.) (collectively, "No-Fault Laws") require Plaintiffs, as automobile insurers, to provide Personal Injury Protection Benefits ("No-Fault Benefits") to those they insure. (*Id.* ¶ 49.)

Insured drivers can assign their rights to No-Fault Benefits, which include up to $50,000 for necessary expenses, to healthcare providers in exchange for healthcare services. (*Id.* ¶¶ 50-51.) Healthcare providers submit claims directly to insurance companies via "NF-3" or "HCFA-1500" forms, then receive payment for provided medical services. (*Id.* ¶ 52.) These forms contain warnings that filing claims with false information or concealing information is a crime. (*Id.* ¶ 65). Plaintiffs are under statutory and contractual obligations to process claims within 30 days. (*Id.* ¶ 215.)

Further, the No-Fault Laws state that a health care provider is ineligible to receive No-Fault Benefits if fraudulently licensed, if paying or receiving unlawful kickbacks for patient

3

referrals, if permitting unlicensed laypersons to control or dictate treatments, or if allowing unlicensed laypersons to share fees for professional services. (*Id.* ¶ 59.) Billing entities are ineligible to bill for or receive payment for goods or services that independent contractors provide; instead, healthcare services must be provided by the billing provider itself, or by its employees. (*Id.* ¶ 196.)

## B. The Alleged Scheme

Plaintiffs allege that Mr. St. Louis "holds himself out as a healthcare industry practice manager and operator of various healthcare offices, despite not having a medical license"; that he "owns, operates and manages [] multidisciplinary clinics in the New York metropolitan area that purport to provide treatment to patients covered by No-Fault insurance, but are, in actuality, organized to supply convenient, one-stop shops for no-fault insurance fraud"; and that he uses 1 Brooklyn "to secure and funnel money relating to the fraudulent scheme[.]" (*Id.* ¶¶ 8-9.)

Overall, Plaintiffs allege that the Defaulting Defendants ran a scheme that systematically submitted fraudulent no-fault claims to Plaintiffs for unnecessary medical services by illegally using the medical license, signature, and other relevant information from a Dr. Wilkins B. Williams ("Dr. Williams") and by illegally controlling Williams Medical. (*Id.* ¶¶ 1-2, 5.) The Defaulting Defendants allegedly colluded with Mr. Efrem and Big Bridge

4

(collectively, the "Funding Defendants"), the John Doe Defendants, and Mr. Korsunskiy and Korsunskiy Legal Group (collectively, the "Lawyer Defendants"). The Defaulting Defendants also engaged a no-fault collection firm (the "Clearing Law Firm") as an escrow agent for the purported benefit of Williams Medical. (*Id.* ¶ 29.)

In 2016, Dr. Williams incorporated Williams Medical, though he never practiced medicine in any capacity through Williams Medical. (*Id.* ¶ 67.) In 2021, Mr. St. Louis approached Dr. Williams, his friend, to open a new medical practice with him. (*Id.* ¶ 70.) In order to secure a loan, Mr. St. Louis presented Dr. Williams with illegitimate loan documents and deceived him into providing, *inter alia*, his signature, medical license, the Williams Medical name, and its tax identification number ("TIN"). (*Id.* ¶¶ 16, 74-76.) The information enabled Mr. St. Louis to unlawfully operate and control Williams Medical; to use the professional corporation to bill Plaintiffs for fraudulent services; and to benefit the scheme participants. (*Id.* ¶ 80.)

Plaintiffs allege that, through an unlawful referral arrangement, the Defaulting Defendants accessed patients from clinics largely in Brooklyn and Nassau County. (*Id.* ¶ 84.) When visiting a clinic, an insured person was automatically referred for a fraudulent service, regardless of the circumstances. (*Id.* ¶ 88.) However, there was no physician involved with performing the fraudulent services; rather, unlicensed technicians saw the

insured person to facilitate capturing their signatures and generating and submitting bills to Plaintiffs. (*Id.* ¶ 136.) Where any fraudulent services were performed, independent contractors not employed or supervised by Dr. Williams or Williams Medical performed them. (*Id.* ¶ 199.)

The Defaulting Defendants, in coordination with the John Doe Defendants, created the claim paperwork to bill for fraudulent services. (*Id.* ¶ 91.) The Defaulting Defendants and the John Doe Defendants created a stamp with the name of Williams Medical, Dr. Williams's National Provider Identifier number, and medical license number, then placed the stamp on, *inter alia*, Assignment of Benefit ("AOB") and medical record forms, with Dr. Williams's forged signature, to misrepresent that Dr. Williams performed the services. (*Id.* ¶¶ 91-94.) Hundreds of NF-3 forms, AOBs, and medical reports or records with Dr. Williams's and Williams Medical's name and TIN were systematically submitted or caused to be submitted to Plaintiffs for payment of fraudulent services. (*Id.* ¶ 207.)

The Defaulting Defendants worked with the Lawyer Defendants to provide billing and collection services for the fraudulent services. (*Id.* ¶ 22.) The Defaulting Defendants provided the Lawyer Defendants with the forged records; in turn, the Lawyer Defendants were intermediaries between the Defaulting Defendants, Williams Medical, and Plaintiffs to submit the forged AOB forms and claim-related documents to Plaintiffs. (*Id.* ¶¶ 93, 97-98, 104.)

Between July 8, 2021, and December 8, 2021, the Lawyer Defendants submitted bills seeking over $810,000 for fraudulent services purportedly provided through Williams Medical. (*Id.* ¶ 116.) Exhibit 1 to the Amended Complaint details these claims, submitted at the direction of the Defaulting Defendants. (*Id.* ¶ 108; ECF No. 22-2, Exhibit "1" ("Exhibit 1").) Dr. Williams neither authored nor approved the submitted bills. (*Id.* ¶ 111.)

Each participating scheme member received a cut of profits. The Funding Defendants paid "advances" against the claims to the Defaulting Defendants and then waited to profit themselves from payments from Plaintiffs and other automobile insurers on the submitted claims. (*Id.* ¶¶ 22, 28.) The Defaulting Defendants used the Clearing Law firm to clear these "advances": the Defaulting Defendants gave the advances issued to Williams Medical to the Clearing Law Firm, which deposited them into their attorney-escrow account, then issued checks back to the Defaulting Defendants, minus the Clearing Law Firm's fees. (*Id.* ¶¶ 29-30.) Ultimately, the Clearing Law Firm issued over $1,000,000 in direct payments to the Defaulting Defendants through checks to Mr. St. Louis and to entities he controlled, including 1 Brooklyn. (*Id.* ¶ 133.)

## II. Procedural Background

Plaintiffs commenced this action on August 4, 2022, against Williams Medical, Dr. Williams, and John Doe Defendants "1" through "10." (ECF No. 1.) On March 9, 2023, Plaintiffs filed an Amended

Complaint against Williams Medical, Mr. St. Louis, 1 Brooklyn, Korsunskiy Legal Group, Big Bridge Funding, Mr. Korsunskiy, Mr. Efrem, and John Doe Defendants 1-10. (AC.) On March 10, 2023, the Court terminated Dr. Williams as a party. All named parties except the Defaulting Defendants appeared. Eventually, Plaintiffs and all appearing Defendants stipulated to the dismissal of claims against them without prejudice. (*See* ECF Nos. 49-55.)

Plaintiffs served 1 Brooklyn on March 17, 2023, via the New York State Secretary of State. (ECF No. 26, 1 Brooklyn Aff. of Serv.) Plaintiffs served Mr. St. Louis on April 5, 2023, by delivering the Summons and Complaint to the doorman at 221 Sea Breeze Avenue, Brooklyn, NY 11224. (ECF No. 33, St. Louis Aff. of Serv.) Neither of the Defaulting Defendants timely answered or otherwise defended the action. On May 9, 2023, Plaintiffs requested entries of default as to both Defendants. (ECF Nos. 41-42.) On October 13, 2023, Plaintiffs filed the instant default judgment motion as to the Defaulting Defendants solely on the common law fraud claim.[2] (ECF No. 56.) Plaintiffs seek compensatory damages

---

[2] Because Plaintiffs seek default judgment only on the common law fraud claim, all other claims against the Defaulting Defendants are deemed waived and dismissed. *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962 (EK) (MMH), 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *report and recommendation adopted*, No. 21-CV-1962 (EK) (MMH), 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022) ("Because Plaintiff does not pursue the unlawful retention claim on the instant [default judgment] motion, it is waived."); *Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, No. 17-CV-2222 (CBA) (PK), 2018 WL 1136037, at *5 (E.D.N.Y. Jan. 30, 2018), *report and recommendation adopted*, No. 17-CV-2222 (CBA) (PK), 2018 WL 1136085 (E.D.N.Y. Feb. 28, 2018) ("Plaintiff does not pursue this claim on the [default judgment] Motion, and the undersigned construes it as waived.").

and prejudgment interest and request that the Defaulting Defendants be held jointly and severally liable. (ECF No. 56-2, ("Pls. Mem.") at 1-2, 15-17.)

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, courts follow a two-step process to enter default judgment. *Mickalis*, 645 F.3d at 128. First, when the defendant has been served with process but fails to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk of court enters the defendant's default. *See* Fed. R. Civ. P. 55(a). The plaintiff may then move the court to enter a default judgment against the defendant. Fed. R. Civ. P. 55(b)(2). However, "[b]efore entering a default judgment, the court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations establish the defendant's liability as a matter of law." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, No. 22-CV-6474 (KAM) (ST), 2024 WL 219092, at *2 (E.D.N.Y. Jan. 22, 2024).

## Discussion

### I. Jurisdiction

Before entering a default judgment, the Court must ensure it has subject matter jurisdiction and personal jurisdiction over each defendant. *See Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP),

9

2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019) (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)).

## A. Subject Matter Jurisdiction

Plaintiffs allege that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). (AC ¶ 45.) Section 1332(a)(1) gives "federal district courts original subject-matter jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000 exclusive of interest and costs." *Fernandez*, No. 22-CV-6474 (KAM) (ST), 2024 WL 219092, at *3. Here, the Court has subject matter jurisdiction under § 1332(a)(1). Plaintiffs are Nebraska corporations with their principal places of business in Maryland; in turn, Plaintiffs allege that 1 Brooklyn is a New York corporation with its principal place of business in Brooklyn, New York; that Mr. St. Louis resides in and is a Florida citizen; and that the amount in controversy exceeds $75,000.00. (AC ¶¶ 36, 38-39, 45.)

## B. Personal Jurisdiction

"It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him." *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 460 (E.D.N.Y. 2022).

### 1. Personal Jurisdiction as to 1 Brooklyn

A plaintiff may serve a corporation by the law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1) and

(h)(1)(A); *see Guerra v. Steelstone Grp.*, LLC, No. 22-CV-7191 (KAM) (SJB), 2024 WL 2319685, at *4 (E.D.N.Y. May 22, 2024). New York law allows a corporation to be served pursuant to Section 306 of the New York Business Corporation Law. *See* N.Y. Bus. Corp. Law § 306. Section 306 permits service of process on the New York Secretary of State as an agent of a domestic corporation where, *inter alia*, process is personally delivered to and left with any person authorized by the Secretary of State to receive such service, at the office of the Department of State in Albany, New York. *See id.*

Here, the Court has personal jurisdiction over 1 Brooklyn. 1 Brooklyn is a New York corporation. (AC ¶ 39.) Plaintiffs properly served 1 Brooklyn with the Summons and Amended Complaint pursuant to § 306 by serving process on an authorized agent in the Office of the Secretary of State in Albany, New York, on March 17, 2023. (ECF No. 26, 1 Brooklyn Aff. of Serv.)

**2. Personal Jurisdiction as to Eric St. Louis**

A plaintiff may serve an individual in federal court by following the law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1). The applicable state law to serve an individual in New York is C.P.L.R. § 308. Section 308(2) provides in relevant part that summons "may be delivered 'within the state to a person of suitable age and discretion at the...dwelling place or usual place of abode of the person to be served and by...mailing

the summons to the person to be served at his or her last known residence[.]'" *Freedom Mortg. Corp.*, 628 F. Supp. 3d at 461 (quoting § 308).

To serve Mr. St. Louis, Plaintiffs delivered the Summons and Amended Complaint to the doorman at 221 Sea Breeze Avenue, Brooklyn, NY 11224 on April 5, 2023. (ECF No. 33, St. Louis Aff. of Serv. at 1.) "New York law permits valid service by leaving a copy of the summons and complaint with a doorman at a defendant's residence or dwelling." *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014); *see MRS Prop. Invs., Inc. v. Bivona*, No. 21-CV-1104 (EK) (AYS), 2021 WL 1738329, at *3 (E.D.N.Y. May 3, 2021) ("Plaintiff's process server attested that he left the summons and verified complaint with Bivona's doorman, after the doorman 'refused to call upstairs.' This is sufficient; New York law provides that a 'doorman is presumptively a person of suitable age and discretion.'" (internal citations omitted)); *6340 NB LLC v. Cap. One, N.A.*, No. 20-CV-02500 (JMA) (JMW), 2022 WL 4386821, at *2 (E.D.N.Y. Sept. 22, 2022) (collecting cases).

Here, Mr. St. Louis was properly served, and this Court has personal jurisdiction over him. The affidavit of service states that the doorman was a "person of suitable age and discretion," that he would not allow the process server access to Mr. St. Louis's apartment door, and that the 221 Sea Breeze Avenue address was Mr. St. Louis's "dwelling place/usual place of abode" within

12

the State of New York. (ECF No. 33, St. Louis Aff. of Serv. at 1.)
Further, the doorman told the process server that Mr. St. Louis
was not presently in the military service, on active duty in the
military service, or a dependent of anybody in the military,
indicating that he knew Mr. St. Louis as a tenant at the Sea Breeze
Address. (*See id.*)

The Summons and Amended Complaint were then mailed on April
6, 2023, to Mr. St. Louis at 221 Sea Breeze Avenue, Apartment #12F,
Brooklyn, NY 11224; the envelope stated "Personal and
Confidential" without indicating it was communication from an
attorney or concerned the instant action. (*Id.*) Plaintiffs filed
proof of service on April 7, 2023, within the allotted twenty days.
(*Id.*)

## C. Venue

Plaintiffs allege that venue is proper in the Eastern District
pursuant to 28 U.S.C. § 1391. (AC ¶ 47.) Venue is proper in "a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred, or a substantial part
of property that is the subject of the action is situated[.]" 28
U.S.C. § 1391(b)(2). Because Plaintiffs allege that a "substantial
amount of the activities forming the basis of the" Amended
Complaint occurred in the Eastern District of New York, venue in
this district is proper. (AC ¶ 47.)

## II. Procedural Requirements

**A. Local Civil Rule 55.1**

Local Civil Rule 55.1 requires that a party requesting entry of default under Federal Rule of Civil Procedure 55(a) shall file (a) a request for a certificate of default, and (b) an affidavit demonstrating that the party against whom an entry of default is sought is not an infant, in the military, or an incompetent person; has failed to plead or otherwise defend the action; and was properly served the complaint. *See* Loc. Civ. R. 55.1.[3] The Rule also requires the plaintiff to attach a proposed clerk's certificate of default to the affidavit.

As to 1 Brooklyn, Plaintiffs filed an affidavit demonstrating 1 Brooklyn was properly served the Summons and Amended Complaint; that it failed to timely answer or defend; and that it is a corporation, and thus not an infant, in the military, or incompetent. (*See* ECF No. 41-1.) As to Mr. St. Louis, Plaintiffs similarly included an affidavit demonstrating he is not in the military, with a certificate confirming as such; that he was properly served the Summons and Amended Complaint; and that he failed to timely answer or defend. (ECF Nos. 42-1 and 42-2.) The certificate confirming Mr. St. Louis is not in the military also states his birth year, demonstrating he is not a minor. (*See* ECF

---

[3] This Order applies the Local Civil Rules of the Eastern District of New York as stated prior to changes to the relevant local rules effective July 1, 2024.

No. 42-2.) Plaintiffs also included proposed certificates of default for both Defaulting Defendants. (ECF Nos. 41-42.)

Plaintiffs do not include a request for a certificate of default as to either 1 Brooklyn or Mr. Saint Louis. Further, the affidavit as to Mr. St. Louis does not explicitly state he is not incompetent. However, "[c]ourts have excused a plaintiff's failure to strictly comply with the Local Civil Rules if a defendant received fair notice of the motion for default judgment." *Dominguez v. Hernandez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *16 (E.D.N.Y. Feb. 22, 2023), *report and recommendation adopted*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023) (collecting cases).

Here, failing to include actual requests for certificates of default and failing to state explicitly that Mr. St. Louis is not incompetent do not impact either Defendants' fair notice of the default judgment motion, which were received by mail, as discussed below. *See, e.g.*, *Matter of D'Ancona*, No. 19-CV-5492 (EK) (VMS), 2021 WL 4482615 (E.D.N.Y. May 24, 2021), *report and recommendation adopted*, No. 19-CV-5492 (EK) (VMS), 2021 WL 4480676 (E.D.N.Y. Sept. 30, 2021) (finding compliance with local rule where petitioner failed to include a certificate of default or copy of claim in its moving papers but where claimants received fair and adequate notice); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A,*

*15C & 15D, AFL-CIO by Callahan v. Coastal Env't Grp. Inc.*, No. 18-CV-5791 (LDH) (SJB), 2019 WL 5693916, at *3 n.7 (E.D.N.Y. Aug. 30, 2019) ("Plaintiffs did not submit a copy of the Clerk's certificate of default or a proposed default judgment order with their motion papers, nor did they mail a proposed default judgment order to Coastal Environmental. However, courts have broad discretion to overlook such non-compliance. Because the non-compliance here is minor and would not prevent Coastal Environmental from receiving notice of the motion, Plaintiffs' failure to comply fully with Local Rule 55.2 is excused." (internal citations omitted)).

Accordingly, the Court finds that Plaintiffs complied with Local Civil Rule 55.1 to provide fair notice of its default judgment motion as to both the Defaulting Defendants.

**B. Local Civil Rules 7.1 and 55.2**

Local Civil Rules 7.1 and 55.2 impose additional requirements that the plaintiff attach certain materials to the motion and file proof that all motion papers were mailed to the defendant.

Plaintiffs comply with Rule 7.1(a)(2), requiring a default judgment motion to include a notice of motion, a memorandum of law, and supporting affidavits and exhibits. Plaintiffs also comply with 55.2(b), requiring the party seeking a default judgment to append to its application: (1) the Clerk's certificate of default; (2) a copy of the claim to which no response has been made; and (3) a proposed default judgment form.

16

Rule 55.2(c) requires that all materials submitted with the default judgment motion be "simultaneously [] mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)." Loc. Civ. R. 55.2(c). The materials include the motion, supporting memoranda or declarations, and the required materials under 55.2(b). Loc. Civ. R. 55.2(b)-(c). "Proof of such mailing shall be filed with the court." Loc. Civ. R. 55.2(c).

"Generally, courts look to the pleading or motion papers to determine whether plaintiff properly mailed its default judgment papers" under Local Civil Rule 55.2(c). *Dominguez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *16.

As to Mr. St. Louis, the required papers were mailed to "221 Sea Breeze Avenue, Apt. 12F, Brooklyn, New York 11224." (ECF No. 57, Aff. of Serv.) In turn, "[p]rior to service of this motion," Plaintiffs "conducted a new Lexis database search for St. Louis" revealing that he "is associated with the address 221 Sea Breeze Avenue, Apartment 12F, Brooklyn, New York 11224...the same address where the process server delivered the summons and Amended Complaint on April 5, 2023." (ECF No. 56-3, Vanunu Declaration

("Vanunu Dec.") at 5.) Accordingly, Plaintiffs complied with Local Civil Rule 55.2(c) as to Mr. St. Louis.[4]

As to 1 Brooklyn, Plaintiffs "conducted a search for 1 Brooklyn on the New York State Department of State Division of Corporations website on September 8, 2023, which lists the service of process address for 1 Brooklyn as 137-44 244th Street, New York, New York 11423" and attach 1 Brooklyn's Certificate of Incorporation as supporting evidence. (Vanunu Dec. at 5-6.) However, the attached Certificate states the address where the Secretary of State should mail process to 1 Brooklyn is "137-44 224 Street, Brooklyn, NY 11413." (ECF No. 56-9 at 1.) The New York Department of State's public website confirms the address stated on the Certificate. *See* https://apps.dos.ny.gov/publicInquiry/ (last visited August 19, 2024.)

Although the address stated in the Vanunu Declaration differs from the address in the Certificate of Corporation and on the Department of State's website, Plaintiffs demonstrate that they

---

[4] Notwithstanding that the Amended Complaint alleges Mr. St. Louis resides in and is a citizen of Florida, the Court finds that Plaintiffs complied with Local Civil Rule 55.2(c) as to Mr. St. Louis in mailing the default judgment papers to Mr. St. Louis's Brooklyn, New York address. As discussed above, Mr. St. Louis was properly served the Summons and Amended Complaint at the same Brooklyn address, where the doorman appeared to be familiar with Mr. St. Louis as a tenant by virtue of knowing Mr. St. Louis was not presently in the military and by the process server's affidavit of service stating the address was Mr. St. Louis's "dwelling place/usual place of abode" within New York. Further, prior to the mailing of the default judgment papers to Mr. St. Louis, counsel for Plaintiffs conducted a new Lexis database search on September 8, 2023, showing Mr. St. Louis indeed remained associated with the same Brooklyn address. (*See* ECF No. 56-3, Vanunu Dec. at 5.)

18

did in fact mail the requisite materials to 1 Brooklyn's proper last known business address. Plaintiffs referenced and attached the Certificate of Incorporation; they also mailed the required papers to 137-44 224th Street, Brooklyn, New York 11413. (ECF No. 57, Aff. of Serv.)[5]

Accordingly, Plaintiffs complied with 55.2(c) by mailing the required materials to the Defaulting Defendants at their respective last known residence or business address. (ECF No. 57, Aff. of Serv.)

**II. Liability**

Although the Court accepts as true all well-pleaded factual allegations in the Complaint, the Court must still ensure the allegations provide a basis for liability and relief. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Federal Rule of Civil Procedure 9(b) also requires

---

[5] Plaintiffs' Affidavit of Service states that Plaintiffs mailed the required papers to 1 Brooklyn at three different addresses: first, to 137-44 244th Street, Rosedale, New York 11422; second, to 137-44 224th Street, Brooklyn, New York 11413 (the correct address); and third, to Mr. St. Louis's address at 221 Sea Breeze Avenue, c/o 1 Brooklyn. (ECF No. 57, Aff. of Serv.)

allegations of fraud be pleaded with specificity, "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* at 403 (internal quotations omitted).

## A. Material Misrepresentations or Omissions of Fact

Plaintiffs have alleged in detail material misrepresentations and omissions of fact by the Defaulting Defendants. The Amended Complaint and Exhibit 1 detail each claim submitted to Plaintiffs via the alleged fraudulent scheme. (AC ¶ 241; Exhibit 1.) Exhibit 1 outlines each claim number, type of document mailed, service date, CPT code, service description, and charge amount; further, each claim originated from Williams Medical. (*See* Exhibit 1.)

The Amended Complaint details that, *inter alia*, each submitted claim represented that (1) Williams Medical properly operated as a medical practice under the control and direction of a licensed physician and therefore eligible for No-Fault Benefits, when actually, the Defaulting Defendants and John Doe Defendants misappropriated Dr. Williams's name, license, personal information, signature, and TIN to de-facto own and operate the practice; (2) that Williams Medical was properly licensed and eligible for No-Fault Benefits, when actually, it was not properly licensed, and was operated by unlicensed persons accessing

patients and referrals through illegal kickbacks; (3) that the services billed were medically necessary and performed by Dr. Williams, when actually, the billed services were not medically necessary and were performed by unlicensed technicians. (*See, e.g.*, AC ¶ 241).

Exhibit 1 and the preceding detailed allegations sufficiently allege material misrepresentations and omissions satisfying Rule 9(b). *See, e.g.*, *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 372-73 (E.D.N.Y. 2012) (finding plaintiff satisfied Rule 9(b) for no-fault scheme RICO claim in part where complaint attached "a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent" where the "charts detail the entity that submitted each claim," "the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate," as "[s]uch information clearly directs defendants to the specific misrepresentations Allstate is alleging"); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 237 (E.D.N.Y. 2008) (finding complaint of no-fault scheme alleged fraudulent statements, the speaker, and why statements were fraudulent in part by attaching representative samples of submitted charges and list of examples).

## B. Knowledge and Intent to Defraud

Under Rule 9(b), "'[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *James M.*

*Liguori, M.D., P.C.*, 589 F. Supp. 2d at 236 (quoting Fed. R. Civ.
P. 9(b)). However, "plaintiffs must allege facts that give rise to
a strong inference of fraudulent intent. The requisite 'strong
inference' of fraud may be established either (a) by alleging facts
to show that defendants had both motive and opportunity to commit
fraud, or (b) by alleging facts that constitute strong
circumstantial evidence of conscious misbehavior or recklessness."
*Id.* at 236–37 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273,
290–91 (2d Cir. 2006) (internal quotations omitted)).

Plaintiffs sufficiently allege the Defaulting Defendants knew
the submitted claims were false. Plaintiffs detail how the
Defaulting Defendants misappropriated Dr. Williams's information
to set up Williams Medical and consistently billed for medically
unnecessary services that were either not performed or performed
by independent contractors, making them ineligible for No-Fault
benefits. (*See, e.g.*, AC ¶¶ 76, 80, 91–94, 207–208). Plaintiffs
allege that the Defaulting Defendants created a stamp with
identifying information of Williams Medical and Dr. Williams, then
used the stamp on forms systematically submitted or caused to be
submitted to Plaintiffs for payment of fraudulent services. (*Id.*
¶¶ 91–94, 207–208.) These allegations sufficiently demonstrate the
Defaulting Defendants knew the claims were false, especially where
Plaintiffs also allege the Defaulting Defendants intentionally
orchestrated a scheme for profit and submitted the fraudulent

claims. *See Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157 (KAM) (VMS), 2013 WL 829302, at *7 (E.D.N.Y. Feb. 11, 2013), *report and recommendation adopted as modified*, No. 12-CV-2157 (KAM) (VMS), 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013) (finding fraud allegations sufficiently particular where plaintiffs allege "Defendants not only knew that they were submitting fraudulent claims" but "did so intentionally in a scheme for profit").

Further, Plaintiffs' allegations demonstrate the "requisite 'strong inference' of fraud" satisfying both strong-inference standards. *James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d at 236-37 (quoting *Lerner*, 459 F.3d at 290-91 (internal quotations omitted)). Plaintiffs' allegations of the extensive nature of the fraudulent scheme, including the volume of submitted claims for unnecessary medical services, financial benefits to the Defaulting Defendants, and number of participating players, sufficiently allege motive and opportunity to commit fraud. *See, e.g., Lyons*, 843 F. Supp. 2d at 373 ("According to the Complaint, defendants gained millions of dollars through their alleged fraud; surely this constitutes motive. And the Complaint alleges that the defendants together entered into a scheme whereby they provided bogus MRIs and then requested reimbursement for false charges stemming from those MRIs—certainly an opportunity for fraud. The Complaint thus raises the strong inference that defendants possessed fraudulent intent, satisfying Rule 9(b)."); *Gov't Emps.*

*Ins. Co. v. Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *15 (E.D.N.Y. Mar. 18, 2015) ("Plaintiffs allege that Baneur had motive to commit fraud, i.e., to gain a financial benefit of tens of thousands of dollars, and opportunity to commit fraud, i.e., the misrepresenting to Plaintiffs of the extent of services provided, that the services were medically necessary, and that the services were provided by Baneur's employees."); *Gov't Emps. Ins. Co. v. Infinity Health Prod., Ltd.*, No. 10-CV-5611 (JG) (JMA), 2012 WL 1427796, at *5 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, No. 10-CV-5611 (JG) (JMA), 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (finding a "strong inference of fraudulent intent" sufficient to establish requisite scienter where plaintiff alleged that defendants were submitting fraudulent claims per an intentional scheme for profit).

Plaintiffs' Amended Complaint also pleads detailed facts demonstrating circumstantial evidence of conscious misbehavior or recklessness by alleging, *inter alia*, that the Defaulting Defendants used independent contractor physicians and "established an illegal referral and kickback scheme arrangement" for access to patients. (AC ¶¶ 14, 199); *see, e.g.*, *Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *15 ("Plaintiffs plead detailed facts regarding Baneur's conscious misbehavior insofar as they claim that Baneur knowingly used independent contractor physicians and

paid kickbacks, despite the fact that both are unlawful practices.").

## C. Reasonable Reliance and Injury

"A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when 'matters are held to be peculiarly within defendant's knowledge ...as [plaintiff] has no independent means of ascertaining the truth.'" *Gov't Emps. Ins. Co. v. Scheer*, No. 13-CV-04039 (SLT) (SMG), 2014 WL 4966150, at *6 (E.D.N.Y. Aug. 18, 2014), *report and recommendation adopted*, No. 13-CV-4039 (SLT) (SMG), 2014 WL 4966137 (E.D.N.Y. Sept. 30, 2014) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997)).

As discussed, Plaintiffs allege that claims were falsely submitted at the direction of the Defaulting Defendants; their allegations detail a scheme "peculiarly within" the Defaulting Defendants' knowledge, where the Defaulting Defendants concealed the scheme through forged stamps, signatures, and other information on fraudulently submitted no-fault claims. Further, Plaintiffs allege that because they were "under statutory and contractual obligations to promptly and fairly process claims within 30 days," "[t]he facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause GEICO to rely upon

25

them." (AC ¶ 215.) These allegations further demonstrate Plaintiffs' reasonable reliance. In *Allstate Insurance Co. v. Lyons*, on similar facts as the instant case, the court "emphatically reject[ed]" the argument that the no-fault insurer failed to properly alleged justifiable reliance:

> The suggestion that Allstate bore the responsibility to discover that defendants had covertly allotted ownership and control of the [professional corporations] to non-physicians is absurd. Allstate was entitled to rely on the representations that defendants made to it and to the New York Department of State regarding the ownership of the [professional corporations]. It is similarly incorrect to claim that Allstate was remiss in relying on defendants' facially reasonable diagnoses and claims for payment and failing to uncover their falsity. In short, regardless of the strength of Allstate's investigatory capabilities, it is not barred from asserting fraud claims solely for failing to detect—within the no-fault law's 30-day window, no less—the complex fraudulent schemes attributed to defendants here.

843 F. Supp. 2d at 374–375. The same analysis is applicable to Plaintiffs, with similar obligations to process, within 30 days, the facially valid documents submitted in support of the fraudulent charges. *See Gov't Emps. Ins. Co. v. Simakovsky*, No. 14-CV-3775 (KAM) (SMG), 2015 WL 5821407, at *10 (E.D.N.Y. Oct. 5, 2015) (finding plaintiffs reasonably relied on defendants' fraudulent statements, and that "material facts misrepresented by defendants were uniquely within their own knowledge," when alleging, *inter alia*, statutory and contractual obligations to process claims within thirty days and reliance on facially valid documents).

Further, Plaintiffs sufficiently allege that the Defaulting Defendants' conduct, on which Plaintiffs reasonably relied, caused Plaintiffs to pay $542,374.05 for fraudulent bills submitted through Williams Medical. (Pls. Mem. at 15; ECF No. 56-8, Declaration of Kathleen Asmus ("Asmus Dec.") ¶¶ 5-6 and Exhibit "1" (stating amounts Plaintiffs voluntarily paid to Williams Medical)); *see James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d at 238 (finding plaintiffs "clearly allege that they relied upon and were damaged by the false representations" where "the complaint specifically states that defendants 'wrongfully obtained' $1,000,000 from State Farm" through submitting fraudulent claims); *Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB) (RER), 2022 WL 772737, at *8 (E.D.N.Y. Feb. 23, 2022), *report and recommendation adopted*, No. 21-CV-00617 (FB) (RER), 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (similar).

## III. Requested Relief

Plaintiffs seek compensatory damages and prejudgment interest and request that the Defaulting Defendants be held jointly and severally liable. (Pls. Mem. at 1-2, 15-17.)[6]

If unchallenged facts establish the defendant's liability, the court determines the amount of damages due. *Fernandez*, No. 22-

---

[6] Plaintiffs' memorandum also states that they seek "costs and disbursements incurred in connection with the prosecution of this action." (Pls. Mem. at 1.) However, Plaintiffs fail to state their costs. Accordingly, this Court has no means to review Plaintiffs' request.

CV-6474 (KAM) (ST), 2024 WL 219092, at *2. The court may determine damages without a hearing based on a plaintiff's affidavits so long as it can ensure a basis for the damages. *See id.* "The amount of damages awarded, if any, must be ascertained 'with reasonable certainty.'" *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187 (PKC) (VMS), 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

## A. Compensatory Damages

As noted, the Court finds the well-pleaded facts establish the Defaulting Defendants' liability for common law fraud. Further, the Court does not require a hearing because damages are determinable based on Plaintiffs' detailed submissions. Plaintiffs submitted the Declaration of Michael Vanunu, a partner at Rivkin Radler LLP, counsel for Plaintiffs, and the Declaration of Kathleen Asmus, Plaintiffs' Claims Manager. (*See* Vanunu Dec.; Asmus Dec.)

The Asmus Declaration and its Exhibit "1" identify payments Plaintiffs made to Williams Medical per Williams Medical's TIN, calculating $542,374.05 voluntarily paid relying on the fraudulent submitted bills. (Asmus Dec. ¶ 5; *see also* Vanunu Dec. at ¶ 12.)[7]

---

[7] The Vanunu Declaration states that "the total damages attributable to the voluntary payments made to the *Davy PCs* in reliance on the fraudulent billing submitted is $542,374.05," but the rest of the paragraph and declaration discuss payments voluntarily made to Williams Medical. (Vanunu Dec. ¶ 12 (emphasis added).) The Court construes the "Davy PCs" misnomer to be an error to apply to Williams Medical.

To calculate $542,374.05, Plaintiffs searched payments using a tax identification number ("TIN Run"), which draws payment information from Plaintiffs' earnings reporting system. (Asmus Dec. ¶ 4.) Plaintiffs' earnings reporting system generates IRS Forms 1099-MISC for payees to report to the IRS, and when Plaintiffs authorize payments to a healthcare provider, Plaintiffs' systems generate, issue, and catalogue a check according to the payee's TIN. (*Id.*) Further, information in Plaintiffs' earnings reporting system, from which the TIN Run is generated, is compiled and maintained in the ordinary course of business. (*Id.*) Using the TIN Run for Williams Medical, Exhibit "1" to the Asmus Declaration identifies each payment Plaintiffs issued to Williams Medical relying on claims the Defaulting Defendants submitted or caused to be submitted. (*Id.* ¶ 5.)

Accordingly, the Court finds that compensatory damages in the amount of $542,374.05 are proper.

## B. Prejudgment Interest

Plaintiffs also submit they are entitled to prejudgment interest at the noncompoundable rate of 9% per annum pursuant to N.Y. C.P.L.R. §§ 5001 and 5004. (Vanunu Dec. ¶ 13.)

"The award of prejudgment interest is a substantive issue, governed by the state substantive law of the forum state in which the federal court sits, namely New York." *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157 (KAM) (VMS), 2013 WL 829302,

at *11 (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000)). "'Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory.'" *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *8 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, No. 11-CV-4261 (ARR) (RER), 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013) (quoting *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (citations omitted)).

"New York law provides for the award of prejudgment interest on damages, computed from the 'earliest ascertainable date the cause of action existed[.]'" *Li-Elle Serv., Inc.*, No. 12-CV-2157 (KAM) (VMS), 2013 WL 829302, at *11 (quoting N.Y. C.P.L.R. § 5001(b)). "However, in the insurance fraud context, 'prejudgment interest accrues from the date the insurance company makes payment.'" *IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *9 (internal quotations omitted).

Supporting their prejudgment interest request, Plaintiffs submit a chart calculating non-compounding prejudgment interest. (Pls. Mem. at 15-16; Vanunu Dec. ¶¶ 13-16.) To simplify the calculation, and therefore calculating, to their detriment, less than what the C.P.L.R. allows Plaintiffs to do, Plaintiffs calculate prejudgment interest starting from the first day of the first quarter following payments to Williams Medical. (*See id.*)

Other courts in this Circuit have granted prejudgment interest using methods more conservative than what the C.P.L.R. provides, though typically starting calculations from January first of the first year following the year in which each fraudulent claim was paid. *See, e.g.*, *Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB) (RER), 2022 WL 772737, at *11 (collecting cases); *Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *24 (E.D.N.Y. Mar. 18, 2015); *IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *9 (E.D.N.Y. Feb. 8, 2013). Accordingly, the Court finds that granting pre-judgment interest beginning the first day of the first quarter following when Plaintiffs made payments – a more conservative method than what the C.P.L.R. outlines - is permissible.

Per the Vanunu Declaration, and confirmed by this Court's independent calculations, the Defaulting Defendants presently owe Plaintiffs $91,048.42[8] in prejudgment interest on a $542,374.05

---

[8] Specifically, Plaintiffs calculate the total interest owed per quarter, with the first quarter starting October 1, 2021, and the last quarter starting October 1, 2023, using a pro-rated 2.25% interest per quarter, computing the following: on $1,288.70 total paid through September 30, 2021, $29.00 interest is owed in the quarter staring October 1, 2021; on $252,939.33 total paid through December 31, 2021, $5,691.13 interest is owed in the quarter staring January 1, 2022; on $538,123.23 total paid through March 31, 2022, $12,107.77 interest is owed in the quarter starting April 1, 2022; on the $542,374.05 total paid through June 30, 2022, $12,203.42 interest is owed in the quarter staring July 1, 2022; on the $542,374.05 total paid through September 30, 2022, $12,203.42 interest is owed in the quarter staring October 1, 2022; on the $542,374.05 total paid through December 31, 2022, $12,203.42 interest is owed in the quarter staring January 1, 2023; on the $542,374.05 total paid through March 31, 2023, $12,203.42 interest is owed in the quarter staring April 1, 2023; on the $542,374.05 total paid through June 30, 2023, $12,203.42 interest is owed in the quarter staring July 1, 2023; and on the $542,374.05 total paid through September 30, 2023, $12,203.42 interest is owed in the quarter staring

31

total paid to Williams Medical, calculated through December 31, 2023.[9] In turn, Defendants owe Plaintiffs daily prejudgment interest of $133.74 (($542,374.05 x .09 annual rate) / 365 days), starting from January 1, 2024, through the date of judgment in this case. The number of days between January 1, 2024, and the date of entry of judgment, September 6, 2024, is 249. Accordingly, the prejudgment interest owed to Plaintiffs is $124,349.68 ((249 days x $133.74) + $91,048.42) as of September 6, 2024, plus $133.74 per day thereafter.

## C. Joint and Several Liability

"In a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." *IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *9 (quoting *GEICO v. Damien*, 10-CV-5409 (SLT) (JMA), 2011 WL 5976071, *7 (E.D.N.Y. Nov. 3, 2011) *report and recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2011)); *see Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, No. 19-CV-4414 (KAM), 2022 WL 17774929, at *12 (E.D.N.Y. June 24, 2022) ("New

October 1, 2023, computing a total interest owed of $91,048.42 through December 31, 2023. (Vanunu Dec. ¶¶ 15-16.)

[9] The Vanunu Declaration states that the total amount of pre-judgment interest due from billing submitted "through and including October 1, 2023" is $91,048.42. (Vanunu Dec. ¶ 16.) However, Plaintiffs' interest calculations appear to include interest for the full final quarter of 2023 (from October 1, 2023, to December 31, 2023) at 2.25%. (*See id.*)

York law provides for joint and several liability for fraudulent acts only where the defendants acted jointly or concurrently to produce a single injury.").

Here, the Defaulting Defendants are jointly and severally liable for damages. The Amended Complaint details the fraudulent scheme, and throughout, it alleges that the Defaulting Defendants both participated in the fraudulent acts. Indeed, the Amended Complaint specifically groups the many actions of Mr. St. Louis and 1 Brooklyn, Mr. St. Louis's company, collectively as the actions of the "Management Defendants." (AC ¶ 9; *see* Pls. Mem. at 1 n.2.) Accordingly, joint and several liability of Mr. St. Louis and 1 Brooklyn is proper.

## Conclusion

As Plaintiffs have demonstrated that the Defaulting Defendants are liable for common law fraud, the Court finds that judgment should be entered in favor of Plaintiffs and against the Defaulting Defendants: (1) $542,374.05 in compensatory damages; and (2) $91,048.42 in prejudgment interest, plus $33,301.26 ($133.74 per day between January 1, 2024, and today, September 6, 2024, the date of the Clerk of Court's entry of final judgment), for a total of $124,349.68. Should the date of judgment be beyond September 6, 2024, the Clerk of Court should be directed to add additional interest of $133.74 per additional day from September 6, 2024, through the date of judgment. Moreover, post-judgment

interest shall accrue from the date of entry of judgment as provided in 28 U.S.C. § 1961.

**SO ORDERED.**

Dated:      September 6, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York